UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MARCO JUAREZ JIMENEZ,

                    Petitioner,

      vs.

PAMELA BONDI,[1] *et al.*,

                Respondents.

Case No.: 2:26-cv-00971-GMN-NJK

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Marco Juarez Jimenez's Amended Petition for Habeas Corpus, (ECF No. 12). Federal Respondents Todd Lyons, Christopher Chestnut, Moises Becerra, Markwayne Mullin, and Todd Blanche did not file a Response, but instead filed a Motion to Dismiss, (ECF No. 14).[2] Petitioner filed a Reply in Support of the Amended Petition, (ECF No. 18). Because Petitioner is a member of the *Jacobo-Ramirez* class, and the Court finds that his detention violates the Due Process clause, the Court GRANTS the Petition and orders Petitioner's immediate release. Further, because the Court waives any exhaustion requirement, it DENIES Federal Respondents' Motion to Dismiss.

I.    **BACKGROUND**

Petitioner Marco Juarez Jimenez is a Mexican citizen who entered the United States without inspection approximately 8 years ago. (Am. Pet. 2:2–4, ECF No. 12). On or about February 22, 2026, Jimenez was arrested by North Las Vegas Metropolitan Police for sexual assault and first-degree kidnapping. (*Id.* 4:8–9). On March 12, 2026, the state dismissed these charges before a preliminary hearing occurred or before a grand jury had been convened. (*Id.*

---

[1] Pamela Bondi and other Respondents were terminated as respondents on April 24, 2026, in the Amended Petition, (ECF No. 12). The Clerk of Court is kindly directed to update the case caption accordingly.
[2] Respondent John Mattos filed a Response, (ECF No. 15), to the Amended Petition indicating that he has no independent authority to release Petitioner, and thus takes no position on the relief sought. (*Id.*

4:9–11).  Upon dismissal of the charges, Petitioner was immediately detained by ICE. (*Id.* 4:12–13).  At the time Petitioner mailed his habeas petition on March 26, 2026, he was at the Nevada Southern Detention Center in Pahrump, Nevada. (*Id.* at n. 4).  On March 29, 2026, he was transferred to a facility in California. (*Id.*, *id.* 3:12–16).  His habeas petition was then docketed on March 30, 2026. (*Id.* at n.4).

Since entering ICE custody, Petitioner has not appeared before an immigration court or had a bond hearing, and no court dates have been set. (*Id.* 4:13–14).  Petitioner has remained in ICE custody without a bond hearing for over two months.  While in detention, Petitioner alleges that he has been having severe health issues. (Reply 2:20–22, ECF No. 18).  Prior to his detention, Petitioner had been hospitalized on two occasions for heart issues, which he explains have worsened while in detention. (*Id.* 2:22–25 (stating that Petitioner has been experiencing chest pain, pain in his hands and head, and high blood pressure)).  He further asserts that he was taken to the hospital in early May for an evaluation, but the ICE facility has only given him ibuprofen. (*Id.* 2:25–26).  With this Amended Petition, Petitioner seeks release, or in the alternative, a bond hearing under 8 U.S.C. § 1226(a).

## II.   **LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

**III.    DISCUSSION**

Petitioner argues that he is entitled to habeas relief as a member of the *Jacobo-Ramirez* class, and because his continued detention without a bond hearing violations his due process rights. (*See generally* Am. Pet.).  The parties agree that Petitioner is a member of the certified class in *Jacobo-Ramirez v. Mullin, et al.*, No. 25-cv-02136-RFB-MDC (D. Nev.). (*Id.* 4:16–17); (Mot. Dismiss 1:17, ECF No. 14).  Federal Respondents move to dismiss the Amended Petition because Petitioner has not requested a bond hearing even though he is a member of the *Jacobo-Ramirez* class. (*Id.* 1:17–20).

**A.  Motion to Dismiss**

Federal Respondents move to dismiss the Amended Petition, arguing that Petitioner is entitled to receive a bond hearing but has not yet requested one.  Though Federal Respondents do not explicitly identify the issue of exhaustion, and do not cite any binding authority for why this argument requires dismissal of the Amended Petition, the Court construes this argument as an exhaustion argument.

As the Court previously explained in *Quintana Cartaya v. Bernacke*, No. 2:26-cv-00438-GMN-MDC, 2026 WL 1229965, at *3–4 (D. Nev. May 5, 2026), the exhaustion requirement is prudential and can be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).  Here, the Court finds that Petitioner's due process claim falls into the futility exception to the exhaustion requirement "carved for constitutional challenges to . . . [DHS] procedures." *Iraheta-Martinez v. Garland*, 12 F.4th 942, 949 (9th Cir. 2021).  Moreover, the Court finds that requiring Petitioner to continue to be subjected to unconstitutional detention (as Federal Respondents concede is the case here) would cause him irreparable harm. *See Rodriguez v. Robbins*, 715

F.3d 1127, 1145 (9th Cir. 2013).  The Court therefore waives any exhaustion requirement and DENIES the Motion to Dismiss.

**B. Class Membership**

The Court finds that Petitioner is a member of the *Jacobo-Ramirez* class.  This certified class includes the following people:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

*Jacobo-Ramirez v. Mullin*, *et al.*, 2026 WL 1229965, at *4 (citation omitted).  Based on the parties' undisputed factual allegations, and the evidence they supply, the Court finds that Petitioner satisfies these criteria. *See Carlson v. Landon*, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings).

First, Petitioner is an undocumented noncitizen who is actively being detained by ICE. (Am. Pet. 4:19).  Second, removal proceedings were initiated against Petitioner before an immigration court in the District of Nevada and he mailed his original habeas petition while those proceedings were in the District of Nevada. (*Id.* 4:20–22).  Third, DHS alleges that Petitioner entered the United States without inspection, admission, or parole. (I-213 at 3, Ex. A to Exs., ECF No. 20).  Fourth, Petitioner is not detained pursuant to 8 U.S.C. §§ 1226(c), 1225(b)(1), nor 1231. (Am Pet. 5:2–3).  Fifth, Petitioner was arrested within the United States' interior long after he entered the country. (I-213 at 3, Ex. A to Exs.).

In sum, Petitioner is a *Jacobo-Ramirez* Class Member, and he is entitled to the relief afforded to the class. *Cf. Navarro v. Mukasey*, 518 F.3d 729, 737 (9th Cir. 2008) ("They are, accordingly, class members eligible for relief.").  Therefore, the Court finds Petitioner's

ongoing detention is unlawful under the INA, because his detention is governed by § 1226(a) and its implementing regulations, and Respondents are improperly subjecting him to mandatory detention under § 1225(b)(2)(A) in violation of the declaratory judgment and vacatur entered in *Jacobo-Ramirez*. *See Jacobo-Ramirez*, 2026 WL 879799, at *33–34.

### C. Due Process

The Court also finds that Petitioner's detention violates the Due Process Clause of the Fifth Amendment. First, the Court notes that Federal Respondents failed to address Petitioner's arguments that release is the appropriate remedy, and thus concede the merits of Petitioner's request for release. *See, e.g.*, *Pernell v. City of Los Angeles*, 650 F. Supp. 3d. 910, 933 (C.D. Cal. 2022) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."). Nevertheless, the Court analyzes Petitioner's due process claim.

Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Though noncitizens do not enjoy constitutional protections outside the borders of the United States, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Thus, "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). But the "recognized liberty interests of U.S. citizens and [noncitizens] are not coextensive: the Supreme Court has 'firmly and repeatedly endorsed the proposition that Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (quoting *Demore*, 538 U.S. at 522).

To determine whether detention violates due process, courts apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1203–07 ("Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context.").[3] Under *Mathews*, "identification of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

First, the private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention." *Hamdi*, 542 U.S. at 529; *see also Rodriguez Diaz*, 53 F.4th at 1207 ("[A]n individual's private interest in freedom from prolonged detention is unquestionably substantial."). "That interest is especially weighty considering the process he has received, and that was available to him, throughout his months of detention—that is, regarding the government's custody determinations, no process at all." *Melendez Paz v. Mullin*, No. 2:26-CV-00296-RFB-MDC, 2026 WL 1194944, at *5 (D. Nev. May 1, 2026) (citing *Rodriguez Diaz*, 53 F.4th at 1208) (considering the process the immigration detainee had already received during his detention pursuant to § 1226(a) and further process that was available to him in weighing his private liberty interest).

---

[3] The Ninth Circuit in *Rodriguez Diaz* "assumed without deciding" that the *Mathews* test applies in due process challenges to immigration detention. 53 F.4th at 1207. However, the *Rodriguez Diaz* court noted that other circuits have applied *Mathews* in considering due process challenges to immigration detention. *Id.* at 1204–05 (citing *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)). The court also explained that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings. *Id.* at 1206 (citing *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). Accordingly, the Court will apply the *Mathews* test here.

Second, the risk of erroneous deprivation of Petitioner's liberty is also high, especially given Petitioner has not received a bond hearing, either pre- or post-detention. The government's current procedures "do not require any individualized determination that Petitioner's detention is justified. Nor is Petitioner provided with a timely opportunity to challenge the government's basis for his arrest and detention under § 1225(b)(2)(A), as, for example, based on a mistake of fact . . . ." *Melendez Paz*, 2026 WL 1194944, at *5. There is no evidence in the record to support a finding that ICE provided Petitioner with an initial custody determination hearing prior to detaining him. Petitioner has also not been given a bond hearing while in detention. Accordingly, the Court finds that current agency procedures do not sufficiently protect Petitioner's liberty interest nor mitigate the risk of erroneous deprivation. The additional procedures that should be afforded under § 1226(a) would greatly reduce the risk of erroneous deprivation.

Third, the final factor of the *Mathews* test considers the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. But Respondents have not explained how detaining Petitioner without due process serves these interests. In fact, limiting detention to noncitizens who are shown to be dangerous or a flight risk may serve the government's and the public's interest by limiting "the fiscal and administrative burdens attendant to immigration detention." *E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264, at *11 (D. Nev. Oct. 14, 2025); *see also Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that in 2017 "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million.

Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person."). On balance, the *Mathews* factors weigh in favor of Petitioner, and the Court therefore finds that he is entitled to a pre-deprivation hearing, before any arrest, under *Mathews*.

### D. Remedy

Based on the record before it, the Court finds that Petitioner has been subjected to arbitrary, erroneous, and prolonged detention in violation of his statutory and constitutional rights, as well as the *Jacobo-Ramirez* declaratory judgment and vacatur. The Court now turns to determine the appropriate remedy for this matter. *See Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus . . . . The court is free . . . to fashion the remedy as law and justice require . . . .") (citations and quotation marks omitted). In doing so, the Court finds that immediate release is the appropriate equitable remedy in this case for the following reason.

While ordering a prompt bond hearing at which the government bears the evidentiary burden by clear and convincing evidence may be an appropriate remedy in some cases, here the Court declines to keep Petitioner detained as it would not adequately remedy the statutory and constitutional injury he has suffered. Petitioner's rights were violated when he was detained without an initial custody determination, and he has remained in unconstitutional detention for over two months. The Court finds that ordering a bond hearing here "would effectively allow the Government to transform an unlawful detention into a lawful one through post-hoc justifications" and would fail to adequately remedy the harms suffered by Petitioner. *Zheng v. Rokosky*, No. 26-CV-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026); *see also, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-

deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").  The Court thus finds "the typical remedy" for "unlawful executive detention"—immediate release from custody—is appropriate here. *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

Additionally, the Court finds that it must adopt equitable remedies to ensure that Respondents provide due process to Petitioner in the future, in the event of Petitioner's re-detention pursuant to § 1226(a). *Cf. Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); *United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997), *as amended on reh'g* (Aug. 4, 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings).  Here, the Court finds it appropriate to order that in the event of Petitioner's re-detention under 8 U.S.C. § 1226(a), Respondents must provide Petitioner a pre-deprivation bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate under § 1226(a) and its implementing regulations. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024) (reviewing the immigration court's compliance with a district court's order that the government provide an immigration detainee a bond hearing "under the Due Process Clause," which required "the government to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing.") (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's Amended Petition for Writ of Habeas Corpus, (ECF No. 12), is **GRANTED**.

**IT IS FURTHER ORDERED** that Federal Respondents' Motion to Dismiss, (ECF No. 14), is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner must be released from detention **by May 29, 2026, between 12:00 p.m. and 3:00 p.m.**

**IT IS FURTHER ORDERED** that Respondents are prohibited from imposing release conditions that substantially interfere with Petitioner's liberty, such as location monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** that Respondents must return Petitioner's personal property upon his release.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from invoking 8 C.F.R. § 1003.19(i)(2) to continue Petitioner's detention, as another court in this District has already found that the regulatory automatic stay is facially unconstitutional and adopts that finding here. *See generally Herrera v. Knight*, 798 F. Supp. 3d 1184 (D. Nev. 2025).

**IT IS FURTHER ORDERED** that, prior to any re-detention of Petitioner, the government must provide no less than seven days' notice to Petitioner and must hold a constitutionally compliant pre-deprivation hearing before a neutral arbiter at which the government bears the burden of providing flight risk or danger by clear and convincing evidence.  This Order does not address the circumstances in which Respondents may detain Petitioner in the event he becomes subject to an executable final order of removal.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that the parties shall file a **JOINT** status report by **June 1, 2026**, to certify compliance with the Court's Order.

Counsel for Respondents are directed to immediately provide notice of this Order to the parties they represent.

The Clerk of Court is kindly directed to **SEAL** the Petition, (ECF Nos. 1-1, 4), the IFP Application, (ECF No. 1), and the Motion for Appointment of Counsel, (ECF No. 1-2), due to the sensitive information contained therein.  The Clerk of Court is further directed to **FILE** the redacted versions of the Petition, IFP Application, Motion for Appointment of Counsel on the docket.

Pamela Bondi and other Respondents were terminated as respondents on April 24, 2026, in the Amended Petition, (ECF No. 12).  The Clerk of Court is kindly directed to update the case caption accordingly.  The Clerk of Court is further directed to enter judgment in favor of Petitioner.

**DATED** this __28__ day of May, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court